**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CATHERINE GARCIA, individually and on behalf of all others similarly situated, | Case No. 1:21-cv-5035 |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| DUPAGE MEDICAL GROUP, LTD. d/b/a DUPAGE MEDICAL GROUP and/or DULY HEALTH AND CARE, | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiff Catherine Garcia ("Ms. Garcia"), individually and on behalf of all other similarly situated individuals, and by and through her undersigned counsel files this Class Action Complaint against Defendant DuPage Medical Group, Ltd. d/b/a DuPage Medical Group and/or Duly Health and Care ("DuPage" or "Defendant") and alleges the following based upon her personal knowledge of the facts, and upon information and belief based upon the investigation of counsel as to all other matters.

## NATURE OF THE ACTION

1.      With this action, Plaintiff and the "Class" (defined below) seek to hold Defendant responsible for the harms it caused them resulting from the massive and preventable data breach that took place sometime between July 12, 2021 and July 13, 2021, during which time unauthorized actors gained access to the DuPage network (the "Data Breach").[1]

---

[1] The Data Breach appears on the U.S. Department of Health and Human Services' online public breach tool showing that 655,384 were potentially impacted by the Data Breach. *See* https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf;jsessionid=A93B681EBBF29EB86 58379D20B3FCAD9 (last accessed September 20, 2021).

1

2.      DuPage, founded in 1999, is the "largest independent, multi-specialty physician-directed medical group in the Midwest with more than 900 primary care and specialty care physicians and more than 6,000 team members."[2]

3.      DuPage changed its name to Duly Health and Care shortly before filing but after the Data Breach, on September 15, 2021.[3]

4.      In order to provide the services touted on its website, DuPage takes possession of its patients' "Personal and Medical Information" (defined below), with the assurance that such information will be kept safe from unauthorized access. By taking possession and control of Plaintiff's and Class members' Personal and Medical Information, Defendant assumes a duty to securely store and protect the Personal and Medical Information of Plaintiff and the Class.

5.      Defendant breached this duty and betrayed the trust of Plaintiff and Class members by failing to properly safeguard and protect their Personal and Medical Information, thus enabling cyber criminals to steal and misuse it.

6.      The compromised Personal and Medical Information at issue includes (i) patient contact information (such as patient names, addresses, and dates of birth); (2) diagnosis codes; (3) Current Procedural Technology ("CPT") codes; (4) treatment dates; and (5) Social Security numbers.[4]

7.      Defendant's misconduct – failing to implement adequate and reasonable data security measures to protect Plaintiff's Personal and Medical Information, failing to take adequate steps to prevent and stop the Data Breach, failing to disclose the material facts that it did not have adequate security practices and employee training in place to safeguard the Personal and Medical

---

[2] *See* https://www.dulyhealthandcare.com/our-history (last accessed September 20, 2021).
[3] *Id.*
[4] *See* https://www.dulyhealthandcare.com/notice-of-data-security-incident (last accessed September 21, 2021).

Information, failing to honor its promises and representations to protect Plaintiff's and Class members' Personal and Medical Information, and failing to provide timely and adequate notice of the Data Breach – caused substantial harm and injuries to Plaintiff and Class members across the United States.

8. Due to Defendant's negligence and data security failures, cyber criminals obtained and now possess everything they need to commit personal and medical identity theft and wreak havoc on the financial and personal lives of 650,000 individuals.

9. As a result of the Data Breach, Plaintiff and Class members have already suffered damages. For example, now that their Personal and Medical Information has been released into the criminal cyber domains, Plaintiff and Class members are at imminent and impending risk of identity theft. This risk will continue for the rest of their lives, as Plaintiff and Class members are now forced to deal with the danger of identity thieves possessing and fraudulently using their Personal and Medical Information. Additionally, Plaintiff and Class members have lost time and money responding to and attempting to mitigate the impact of the Data Breach.

10. Plaintiff brings this action individually and on behalf of the Class and seeks actual damages, statutory damages, punitive damages, restitution, and injunctive and declaratory relief (including significant improvements to Defendant's data security protocols and employee training practices), reasonable attorney's fees, costs, and expenses incurred in bringing this action, and all other remedies this Court deems just and proper.

## THE PARTIES

**Plaintiff Catherine Garcia**

11. Plaintiff Catherine Garcia is a citizen and resident of Glendale Heights, Illinois.

12. Plaintiff is a patient of, and received medical services from, Defendant.

3

13.     Plaintiff received a letter from Defendant dated September 10, 2021, informing her that her Personal and Medical Information was compromised in the Data Breach, including name, address, date of birth, diagnosis code, CPT code, and treatment date. *See* **Exhibit 1**, the "Notice." Information of Defendant's website about the Data Breach states that Social Security numbers were also stolen.[5]

14.     As required in order to obtain medical services from DuPage, Plaintiff provided them with her highly sensitive personal, health, and insurance information, including the Personal and Medical Information that was compromised in the Data Breach.

15.     Because of Defendant's negligence and failure to train and supervise its employees, which negligence and failure led to the Data Breach, Plaintiff's Personal and Medical Information is now in the hands of cyber criminals.

16.     On or about August 2, 2021, Plaintiff learned that an unknown individual opened a new credit card associated with Plaintiff's bank account and in Plaintiff's name. Fraudulent charges were incurred thereon.

17.     On or about August 12, 2021, an unknown individual withdrew $50 from Plaintiff's bank account.

18.     On or about August 13, 2021, an unknown individual withdrew $50 from Plaintiff's bank account.

19.     As a result, Plaintiff expended time freezing her credit, canceling credit cards and engaging in other efforts to mitigate the harm caused to her by the Data Breach.

20.     Plaintiff is now under an imminent risk of subsequent identity theft and fraud, including medical identity theft and medical fraud.

21.     The imminent risk of medical identity theft and fraud Plaintiff now faces is substantial, certainly impending, and continuous and ongoing because of the negligence of

---

[5] *See* https://www.dulyhealthandcare.com/notice-of-data-security-incident (last accessed September 21, 2021).

4

Defendant in its failure to implement adequate data security protocols and train its employees, which negligence led to the Data Breach. Plaintiff has already spent time responding to the Data Breach in an attempt to mitigate the harms she will certainly experience in the future as a result of the Data Breach.

22.     As a direct and proximate result of the Data Breach, Plaintiff will need to have identity theft protection for the rest of her lifetime.

23.     Plaintiff has suffered additional injury directly and proximately caused by the Data Breach, including damages and diminution in the value of her the Personal and Medical Information that was entrusted to Defendant for the sole purpose of obtaining medical services necessary for her health and well-being, with the understanding that Defendant would safeguard this information against unauthorized disclosure. Additionally, Plaintiff's Personal and Medical Information is at continued risk of compromise and unauthorized disclosure as it remains in the possession of Defendant and is subject to future breaches so long as Defendant fails to undertake appropriate and adequate measures, including the implementation of enhanced employee training and data security protocols, to protect it.

**Defendant DuPage**

24.     DuPage is an Illinois corporation, which is headquartered and has its principal place of business in Downers Grove, Illinois, is a large independent, multi-specialty physician-directed medical group.

<u>JURISDICTION AND VENUE</u>

25.     This Court has diversity jurisdiction over this action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and members of the Class are citizens of states that differ from Defendant.

26.     This Court has personal jurisdiction over Defendant because Defendant maintains its headquarters in Illinois. Also, upon information and belief, the Data Breach at issue occurred through Defendant's systems physically located in Illinois.

27.     Venue is likewise proper as to Defendant in this District under 28 U.S.C. § 1391(a)(1) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District. Defendant is based in this District, conducts business through this District, and maintained Plaintiff's and Class members' Personal and Medical Information in this District.

### FACTUAL ALLEGATIONS

**A.      The Data Breach and Defendant's Failed Response**

28.     On or about July 12 or 13, 2021, Defendant experienced a security incident that caused a disruption to its network systems. Defendant first learned of the Data Breach on July 13, 2021.[6]

29.     However, Defendant did not determine until August 17, 2021 that certain files stored within its environment containing Personal and Medical Information may have been affected by the Data Breach.

30.     Defendant did not begin notifying affected individuals until at least September 10, 2021.

31.     Apparently, Defendant needed almost a full month following the completion of its investigation to notify affected individuals and provide them the information they needed to protect themselves against fraud and identity theft. Defendant was, of course, too late in the discovery and notification of the Data Breach.

---

[6] *See* https://www.dulyhealthandcare.com/notice-of-data-security-incident (last accessed September 21, 2021).

32.     In addition to the severity of the Data Breach and the unreasonable amount of time it took Defendant to finally become aware of it and notify the victims, Defendant has done very little to protect Plaintiff and the Class. In the Notice, Defendant encourages them "to remain vigilant against incidents of identity theft…" *See* Notice at 2.

33.     Defendant failed to adequately safeguard Plaintiff's and Class members' Personal and Medical Information, allowing cyber criminals to gain access to this wealth of priceless information for over a month before warning the criminals' victims to be on the lookout.

34.     Defendant failed to spend sufficient resources on monitoring and training its employees on proper data security protocols.

35.     Defendant had obligations created by the Health Insurance Portability and Accountability Act ("HIPAA"), reasonable industry standards, common law, state statutory law, and its assurances and representations to its clients and its clients' patients to keep patients' Personal and Medical Information confidential and to protect such Personal and Medical Information from unauthorized access.

36.     Plaintiff and Class members were required to provide their Personal and Medical Information with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

37.     The compromised Personal and Medical Information at issue has great value to cyber criminals due to the large number of individuals affected and the fact that health insurance information and Social Security numbers were part of the data that was compromised.

**B.** **Defendant had an Obligation to Protect Personal and Medical Information under Federal Law and the Applicable Standard of Care**

38. Defendant is covered by HIPAA (45 C.F.R. § 160.102). As such, it is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

39. HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

40. HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

41. HIPAA requires "compl[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

42. "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

43. HIPAA's Security Rule or *Security Standards for the Protection of Electronic Protected Health Information* requires Defendant to do the following:

  a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

8

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by its workforce.

44. HIPAA also requires Defendant to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e).

45. Additionally, Defendant is required under HIPAA to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

46. The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, also requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."[7]

47. Defendant's Notice is dated September 10, 2021, the sixtieth day following the Data Breach.

48. Defendant was also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information

---

[7] Breach Notification Rule, U.S. Dep't of Health & Human Services, https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html (emphasis added).

is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

49.     In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Personal and Medical Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Personal and Medical Information of the Class.

50.     Defendant owed a duty to Plaintiff and the Class to create and implement reasonable data security practices and procedures to protect the Personal and Medical Information in its possession, including adequately training its employees and others who accessed Personal and Medical Information within its computer systems on how to adequately protect Personal and Medical Information.

51.     Defendant owed a duty to Plaintiff and the Class to implement processes that would detect a compromise of Personal and Medical Information in a timely manner.

52.     Defendant owed a duty to Plaintiff and the Class to act upon data security warnings and alerts in a timely fashion.

53.     Defendant owed a duty to Plaintiff and the Class to disclose whether its computer systems and data security practices were inadequate to safeguard individuals' Personal and Medical Information from theft because such an inadequacy would be a material fact in the decision to entrust Personal and Medical Information with Defendant.

10

54.     Defendant owed a duty to Plaintiff and the Class to disclose in a timely and accurate manner when data breaches occurred.

55.     Defendant owed a duty of care to Plaintiff and the Class because they were foreseeable and probable victims of any inadequate data security practices.

## C.     Defendant was on Notice of Cyber Attack Threats in the Healthcare Industry and of the Inadequacy of its Data Security

56.     Defendant was on notice that companies in the healthcare industry are targets for cyberattacks.

57.     Defendant was on notice that the FBI has recently been concerned about data security in the healthcare industry. In August 2014, after a cyberattack on Community Health Systems, Inc., the FBI warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PII)."[8]

58.     The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[9]

---

[8] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, REUTERS (Aug. 2014), http://www.reuters.com/article/2014/08/20/us-cybersecurity-healthcare-fbi-idUSKBN0GK24U20140820.
[9] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, AM. MED. ASS'N (Oct. 4, 2019), https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomeware-attacks-shut-down-clinics-hospitals.

59.     As implied by the foregoing AMA warning, stolen Personal and Medical Information can be used to interrupt important medical services themselves. This is an imminent and certainly impending risk for Plaintiff and Class members.

60.     Defendant was on notice that the federal government has been concerned about healthcare company data encryption.

61.     The United States Department of Health and Human Services' ("DHHS") Office for Civil Rights urges the use of encryption of data containing sensitive personal information. As long ago as 2014, the DHHS fined two healthcare companies approximately two million dollars for failing to encrypt laptops containing sensitive personal information. In announcing the fines, Susan McAndrew, the DHHS's Office of Human Rights' deputy director of health information privacy, stated "[o]ur message to these organizations is simple: encryption is your best defense against these incidents."[10]

62.     As a covered entity under HIPAA, Defendant should have known about its data security vulnerabilities and sought better protection for the Personal and Medical Information accumulating in its employees' unprotected files.

**D.     Cyber Criminals Have and Will Continue to Use Plaintiff's and Class Members' Personal and Medical Information to Defraud Them**

63.     Plaintiff and Class members' Personal and Medical Information is of great value to cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and the Class members and to profit off their misfortune.

---

[10] "Stolen Laptops Lead to Important HIPAA Settlements," U.S. Dep't of Health and Human Services (Apr. 22, 2014), available at https://wayback.archive- it.org/3926/20170127085330/https://www.hhs.gov/about/news/2014/04/22/stolen-laptops-lead-to-important-hipaa-settlements.html.

64. Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[11] For example, with the Personal and Medical Information stolen in the Data Breach, identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[12] These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class members.

65. Personal and Medical Information is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it and trade the information on the cyber black-market for years.[13]

66. For example, it is believed that certain highly sensitive personal information compromised in the 2017 Experian data breach was being used, three years later, by identity thieves to apply for COVID-19-related unemployment benefits in the state of Oklahoma.[14]

67. The Personal and Medical Information exposed in this Data Breach is valuable to identity thieves for use in the kinds of criminal activity described herein. These risks are both

---

[11] "Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

[12] *See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[13] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/assets/270/262904.htmlu.

[14] *See* https://www.engadget.com/stolen-data-used-for-unemployment-fraud-ring-174618050.html; *see also* https://www.wired.com/story/nigerian-scammers-unemployment-system-scattered-canary/.

certainly impending and substantial. As the FTC has reported, if cyber thieves get access to a person's highly sensitive information, they will use it.[15]

68.     Cyber criminals may not use the information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[16]

69.     For instance, with a stolen Social Security number, which is only one category of the Personal and Medical Information compromised in the Data Breach, someone can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.[17] Identity thieves can also use the information stolen from Plaintiff and Class members to qualify for expensive medical care and leave them and their contracted health insurers on the hook for massive medical bills.

70.     Medical identity theft is one of the most common, most expensive, and most difficult-to-prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," which is more than identity thefts involving banking and finance, the government and the military, or education.[18]

---

[15] Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

[16] *Data Breaches Are Frequent*, *supra* note 11.

[17] *See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[18] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/.

71.      "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[19]

72.      As indicated by Jim Trainor, second in command at the FBI's cyber security division: "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place. Credit cards can be, say, five dollars or more where [protected health information] can go from $20 say up to—we've seen $60 or $70 [(referring to prices on dark web marketplaces)]."[20] A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market.[21]

73.      A study by Experian found that the average total cost of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[22] Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third saw their insurance premiums rise, and forty percent were never able to resolve

---

[19] *Id.*

[20] IDExperts, *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows*, https://www.idexpertscorp.com/knowedge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat.

[21] *Managing cyber risks in an interconnected world*, PRICEWATERHOUSECOOPERS: Key findings from The Global State of Information Security Survey 2015, https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global-state-of-information-security-survey-2015.pdf.

[22] *See* Elinor Mills, "Study: Medical Identity Theft Is Costly for Victims," CNET (Mar, 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/.

15

their identity theft at all.[23] In other words, identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit.[24]

74.     Defendant's offer of 12 months of credit monitoring to the Class is woefully inadequate because the worst is yet to come.

75.     With this Data Breach, identity thieves have already started to prey on the victims, and we can anticipate that this will continue.

76.     Victims of the Data Breach, like Plaintiff and other Class members, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their credit because of the Data Breach.[25]

77.     In fact, as a direct and proximate result of the Data Breach, Plaintiff and the Class have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.  Plaintiff and the Class must now take the time and effort (and spend the money) to mitigate the actual and potential impact of the Data Breach on their everyday lives, including purchasing identity theft and credit monitoring services every year for the rest of their lives, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions and healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

---

[23] *Id.*; *see also Healthcare Data Breach: What to Know About them and What to Do After One*, EXPERIAN, https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/.

[24] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

[25] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

78.     Plaintiff and the Class have suffered or will suffer actual harms for which they are entitled to compensation, including but not limited to the following:

a.  Trespass, damage to, and theft of their personal property, including Personal and Medical Information;

b.  Improper disclosure of their Personal and Medical Information;

c.  The imminent and certainly impending injury flowing from actual and potential future fraud and identity theft posed by their Personal and Medical Information being in the hands of criminals and having already been misused;

d.  The imminent and certainly impending risk of having their confidential medical information used against them by spam callers to defraud them;

e.  Damages flowing from Defendant's untimely and inadequate notification of the Data Breach;

f.  Loss of privacy suffered as a result of the Data Breach;

g.  Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach;

h.  Ascertainable losses in the form of deprivation of the value of patients' personal information for which there is a well-established and quantifiable national and international market;

i.  The loss of use of and access to their credit, accounts, and/or funds;

j.  Damage to their credit due to fraudulent use of their Personal and Medical Information; and

k.  Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

79.     Moreover, Plaintiff and Class members have an interest in ensuring that their Personal and Medical Information, which remains in the possession of Defendant, is protected from further public disclosure by the implementation of better employee training and industry standard and statutorily compliant security measures and safeguards. Defendant has shown itself to be wholly incapable of protecting Plaintiff's and Class members' Personal and Medical Information.

80.     Plaintiff and Class members are desperately trying to mitigate the damage that Defendant has caused them but, given the kind of Personal and Medical Information Defendant made so easily accessible to cyber criminals, they are certain to incur additional damages. Because identity thieves already have their Personal and Medical Information, Plaintiff and Class members will need to have identity theft monitoring protection for the rest of their lives.

81.     None of this should have happened. The Data Breach was preventable.

**E.     Defendant Could Have Prevented the Data Breach but Failed to Adequately Protect Plaintiff's and Class Members' Personal and Medical Information**

82.     Data breaches are preventable.[26] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[27] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[28]

---

[26] Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).
[27] *Id.* at 17.
[28] *Id.* at 28.

83. "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures … Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[29]

84. Defendant required Plaintiff and Class members to surrender their Personal and Medical Information – including but not limited to their names, addresses, Social Security numbers, medical information, and health insurance information – and was entrusted with properly holding, safeguarding, and protecting against unlawful disclosure of such Personal and Medical Information.

85. Defendant breached fiduciary duties owed to Plaintiff and the Class as guardian of their Personal and Medical Information.

86. Many failures laid the groundwork for the occurrence of the Data Breach, starting with Defendant' failure to incur the costs necessary to implement adequate and reasonable cyber security training, procedures and protocols that were necessary to protect Plaintiff's and Class members' Personal and Medical Information.

87. Defendant maintained the Personal and Medical Information in a reckless manner, making the Personal and Medical Information vulnerable to unauthorized disclosure.

88. Defendant knew, or reasonably should have known, of the importance of safeguarding Personal and Medical Information and of the foreseeable consequences that would occur if Plaintiff's and Class members' Personal and Medical Information was stolen, including the significant costs that would be placed on Plaintiff and Class members as a result of a breach.

---

[29] *Id.*

89.     The risk of improper disclosure of Plaintiff's and Class members' Personal and Medical Information was a known risk to Defendant, and thus Defendant was on notice that failing to take necessary steps to secure Plaintiff's and Class members' Personal and Medical Information from that risk left the Personal and Medical Information in a dangerous condition.

90.     Defendant disregarded the rights of Plaintiff and Class members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that the Personal and Medical Information was protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class members' Personal and Medical Information; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class members prompt and accurate notice of the Data Breach.

## CLASS ACTION ALLEGATIONS

91.     Plaintiff brings this action under Federal Rule of Civil Procedure 23 against Defendant individually and on behalf of all others similarly situated. Plaintiff asserts all claims on behalf of the Class and Subclass, defined as follows:

**Nationwide Class**

> All persons residing in the United States whose personal and/or medical information was compromised as a result of the DuPage Data Breach that occurred sometime between July 12, 2021 and July 13, 2021.

**Illinois Subclass**

> All persons residing in Illinois whose personal and/or medical information was compromised as a result of the DuPage Data Breach that occurred sometime between July 12, 2021 and July 13, 2021.

92. Excluded from the Nationwide Class and Illinois Subclass are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staff.

93. Plaintiff reserves the right to amend the above definitions or to propose alternative or additional subclasses in subsequent pleadings and motions for class certification.

94. The Nationwide Class and the Illinois Subclass are collectively referred to as the "Class" unless otherwise specified.

## Class Certification is Appropriate

95. The proposed Class and Illinois Subclass meet the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

96. Numerosity: The proposed Class is believed to be so numerous that joinder of all members is impracticable. The proposed Illinois Subclass is also believed to be so numerous that joinder of all members would be impractical. As set forth above, there are 655,384 individuals potentially impacted by the Data Breach. *See* note 1, *supra*.

97. Typicality: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through Defendant's uniform misconduct. The same event and conduct that gave rise to Plaintiff's claims are identical to those that give rise to the claims of every other Class member because Plaintiff and each member of the Class had their sensitive Personal and Medical Information compromised in the same way by the same conduct of Defendant.

98. Adequacy: Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class and proposed Illinois Subclass that she seeks to

represent; Plaintiff has retained counsel competent and highly experienced in data breach class action litigation; and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

99.      Superiority: A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult, if not impossible, for members of the Class individually to effectively redress Defendant's wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

100.     Commonality and Predominance: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a.   Whether Defendant engaged in the wrongful conduct alleged herein;

b.   Whether Defendant failed to adequately safeguard Plaintiff's and the Class's Personal and Medical Information;

c.   Whether Defendant's computer systems and data security practices used to protect Plaintiff's and Class members' Personal and Medical Information

22

violated the FTC Act and/or HIPAA, and/or state laws and/or Defendant's other duties discussed herein;

d. Whether Defendant owed a duty to Plaintiff and the Class to adequately protect their Personal and Medical Information, and whether it breached this duty;

e. Whether Defendant knew or should have known that its computer and network security systems and business email accounts were vulnerable to a data breach;

f. Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the Data Breach;

g. Whether Defendant breached contractual duties to Plaintiff and the Class to use reasonable care in protecting their Personal and Medical Information;

h. Whether Defendant failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

i. Whether Plaintiff and the Class suffered injury as a proximate result of Defendant's negligent actions or failures to act;

j. Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief;

k. Whether injunctive relief is appropriate and, if so, what injunctive relief is necessary to redress the imminent and currently ongoing harm faced by Plaintiff and members of the Class;

l. Whether Defendant's actions and inactions alleged herein constitute gross negligence; and

m. Whether Plaintiff and Class members are entitled to punitive damages.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Class or, alternatively, Plaintiff and the Illinois Subclass)**

101. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

102. Defendant gathered and stored the Personal and Medical Information of Plaintiff and the Class as part of the operation of its business.

103. Upon accepting and storing the Personal and Medical Information of Plaintiff and Class members, Defendant undertook and owed a duty to Plaintiff and Class members to exercise reasonable care to secure and safeguard that information and to use secure methods and to implement necessary data security protocols and employee training to do so.

104. Defendant had full knowledge of the sensitivity of the Personal and Medical Information, the types of harm that Plaintiff and Class members could and would suffer if the Personal and Medical Information was wrongfully disclosed, and the importance of adequate security.

105. Plaintiff and Class members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the Class members had no ability to protect their Personal and Medical Information that was in Defendant's possession. As such, a special relationship existed between Defendant and Plaintiff and the Class.

106. Defendant owed Plaintiff and Class members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing their Personal and Medical Information, including taking action to reasonably

24

safeguard such data and providing notification to Plaintiff and the Class members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

107.    Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

108.    Defendant had duties to protect and safeguard the Personal and Medical Information of Plaintiff and the Class from being vulnerable to compromise by taking common-sense precautions when dealing with sensitive Personal and Medical Information. Additional duties that Defendant owed Plaintiff and the Class include:

> a.   To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, protocols, policies, procedures and practices to ensure that Plaintiff's and Class members' Personal and Medical Information was adequately secured from impermissible release, disclosure, and publication;
>
> b.   To protect Plaintiff's and Class members' Personal and Medical Information in its possession by using reasonable and adequate security procedures and systems; and
>
> c.   To promptly notify Plaintiff and Class members of any breach, security incident, unauthorized disclosure, or intrusion that affected or may have affected their Personal and Medical Information.

109.  Only Defendant was in a position to ensure that its systems and protocols were sufficient to protect the Personal and Medical Information that had been entrusted to it.

110.  Defendant breached its duties of care by failing to adequately protect Plaintiff's and Class members' Personal and Medical Information. Defendant breached its duties by, among other things:

    a.  Failing to exercise reasonable care in obtaining, retaining, securing, safeguarding, protecting, and deleting the Personal and Medical Information in its possession;

    b.  Failing to protect the Personal and Medical Information in its possession using reasonable and adequate security procedures and systems;

    c.  Failing to adequately and properly audit, test, and train its employees regarding how to properly and securely transmit and store Personal and Medical Information;

    d.  Failing to adequately train its employees to not store unencrypted Personal and Medical Information in their personal files longer than absolutely necessary for the specific purpose that it was sent or received;

    e.  Failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class's Personal and Medical Information;

    f.  Failing to implement processes to quickly detect data breaches, security incidents, or intrusions; and

    g.  Failing to promptly notify Plaintiff and Class members of the Data Breach that affected their Personal and Medical Information.

111.    Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

112.    As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

113.    Through Defendant's acts and omissions described herein, including but not limited to Defendant's failure to protect the Personal and Medical Information of Plaintiff and Class members from being stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure the Personal and Medical Information of Plaintiff and Class members while it was within Defendant's possession and control.

114.    Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class members, Defendant prevented Plaintiff and Class members from taking meaningful, proactive steps to securing their Personal and Medical Information and mitigating damages.

115.    As a result of the Data Breach, Plaintiff and Class members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, paying for spyware removal, responding to the fraudulent use of the Personal and Medical Information, and closely reviewing and monitoring bank accounts, credit reports, and statements sent from providers and their insurance companies.

116.    Defendant's wrongful actions, inaction, and omissions constituted (and continue to constitute) common law negligence.

117.    The damages Plaintiff and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

118.     Plaintiff and the Class have suffered injury and are entitled to actual and punitive damages in amounts to be proven at trial.

**SECOND CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class or, alternatively, Plaintiff and the Illinois Subclass)**

119.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

120.     Through their course of conduct, Defendant, Plaintiff and Class members entered into implied contracts for the provision of medical care and treatment, as well as implied contracts for Defendant to adequately safeguard and protect Plaintiff's and Class members' Personal and Medical Information.

121.     Implied in these exchanges was a promise by Defendant to ensure that the Personal and Medical Information of Plaintiff and Class members in its possession was only used to provide the agreed-upon medical treatment by Defendant.

122.     These exchanges constituted an agreement and meeting of the minds between the parties: Plaintiff and Class members would provide their Personal and Medical Information in exchange for medical services provided by Defendant.

123.     These agreements were made by Plaintiff or Class members who sought medical treatment from Defendant.

124.     It is clear by these exchanges that the parties intended to enter into an agreement and mutual assent occurred. Plaintiff and Class members would not have disclosed their Personal and Medical Information to Defendant but for the prospect of Defendant's promise of confidential medical services. Conversely, Defendant presumably would not have taken Plaintiff's and Class members' Personal and Medical Information if it did not intend to provide Plaintiff and Class members medical services.

125.     Defendant was therefore required to reasonably safeguard and protect the Personal and Medical Information of Plaintiff and Class members from unauthorized disclosure and/or use.

28

126.    Plaintiff and Class members accepted Defendant's provision of medical services and fully performed their obligations under the implied contract with Defendant by providing their Personal and Medical Information to Defendant, among other obligations.

127.    Plaintiff and Class members would not have provided and entrusted their Personal and Medical Information to Defendant in the absence of their implied contracts with Defendant and would have instead retained the opportunity to control their Personal and Medical Information for uses other than obtaining medical services from Defendant.

128.    Defendant breached the implied contracts with Plaintiff and Class members by failing to reasonably safeguard and protect Plaintiff's and Class members' Personal and Medical Information.

129.    Defendant's failure to implement adequate measures to protect the Personal and Medical Information of Plaintiff and Class members violated the purpose of the agreement between the parties: Plaintiff's and Class members' providing the Personal and Medical Information in exchange for the provision of medical services by Defendant.

130.    Defendant was on notice that its systems could be vulnerable to unauthorized access yet failed to invest in proper safeguarding of Plaintiff's and Class members' Personal and Medical Information.

131.    Instead of spending adequate financial resources to safeguard Plaintiff's and Class members' Personal and Medical Information, which Plaintiff and Class members were required to provide to Defendant, Defendant instead used that money for other purposes, thereby breaching its implied contracts it had with Plaintiff and Class members.

132.    As a proximate and direct result of Defendant's breaches of its implied contracts with Plaintiff and Class members, Plaintiff and the Class members suffered injury as described in detail in this Complaint and are entitled to damages in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class or, alternatively, Plaintiff and the Illinois Subclass)**

133.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

134.    Plaintiff and the Class bring this claim in the alternative to other claims and remedies at law.

135.    Defendant, by way of its affirmative actions and omissions, including breaching its duties of care, was unjustly enriched by obtaining monetary benefits for the provision of medical services while failing to reasonably secure Plaintiff's and Class members' Personal and Medical Information.

136.    Plaintiff and Class members suffered damages as a direct and proximate result of Defendant's failure to reasonably secure the Personal and Medical Information entrusted to Defendant.

137.    Accordingly, Plaintiff and Class members are entitled to relief in the form of disgorgement of all ill-gotten gains, which should be put into a common fund to be distributed to Plaintiff and the Class.

**FOURTH CAUSE OF ACTION**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(On Behalf of Plaintiff and the Class or, alternatively, Plaintiff and the Illinois Subclass)**

138.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

139.    This count is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

140. As previously alleged, Plaintiff and members of the Class entered into implied contracts with Defendant, which contracts required Defendant to provide adequate security for the Personal and Medical Information it collected from Plaintiff and the Class.

141. Defendant owes a duty of care to Plaintiff and Class members that require it to adequately secure Plaintiff's and Class members' Personal and Medical Information.

142. Defendant still possesses the Personal and Medical Information of Plaintiff and the Class members.

143. Defendant has not satisfied its contractual obligations and legal duties to Plaintiff and the Class members.

144. Actual harm has arisen in the wake of the Data Breach regarding Defendant's contractual obligations and duties of care to provide security measures to Plaintiff and the members of the Class. Further, Plaintiff and the members of the Class are at risk of additional or further harm due to the exposure of their Personal and Medical Information and Defendant's failure to address the security failings that led to such exposure.

145. There is no reason to believe that Defendant's employee training and security measures are any more adequate now than they were before the Data Breach to meet Defendant's contractual obligations and legal duties.

146. Plaintiff and the Class, therefore, seek a declaration (1) that Defendant's existing data security measures do not comply with its contractual obligations and duties of care to provide adequate data security, and (2) that to comply with its contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to, the following:

a. Ordering that Defendant engage internal security personnel to conduct testing, including audits on Defendant's systems, on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

b. Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

c. Ordering that Defendant audit, test, and train its security personnel and employees regarding any new or modified data security policies and procedures;

d. Ordering that Defendant provide employee training regarding the dangers and risks inherent in storing and/or transmitting Personal and Medical Information;

e. Ordering that Defendant purge, delete, and destroy, in a reasonably secure manner, any Personal and Medical Information not necessary for its provision of services;

f. Ordering that Defendant conduct regular database scanning and security checks; and

g. Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel and employees how to safely share and maintain highly sensitive personal information, including but not limited to, patient personally identifiable information and patient protected health information.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT**
**(815 ILCS 505/1, *ET SEQ.*)**
**(On Behalf of Plaintiff and the Illinois Subclass)**

147.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

148.    Plaintiff brings this claim on behalf of herself and the Illinois Subclass.

149.    Pursuant to 815 ILCS 530/20, a violation of the Illinois Personal Information Protection Act ("PIPA"), 815 ILCS 530/1, *et seq.*, constitutes an unlawful practice under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

150.    Pursuant to 815 ILCS 505/2RR(g), a violation of 815 ILCS 505/2RR(a)(1) constitutes an unlawful practice under the ICFA.

151.    Defendant is a "person" as defined by 815 ILCS 505/1.

152.    A person may not publicly post or display in any manner an individual's Social Security number. 815 ILCS 505/2RR(a)(1). "Publicly post" or "publicly display" means to intentionally communicate *or otherwise make available* to the general public. *Id.* (emphasis added).

153.    As a privately held corporation that handles, collects, disseminates, and otherwise deals with nonpublic Personal and Medical Information, Defendant is a Data Collector as defined in 815 ILCS 530/5. Personal Information includes an individual's name in combination with either the person's Social Security number or Medical Information (as defined in 815 ILCS 530/5). Plaintiff's and Illinois Subclass members' Personal and Medical Information constitutes Medical Information and Personal Information as defined in 815 ILCS 530/5.

154.    Plaintiff's and Illinois Subclass members' Personal and Medical Information was made available to the general public because, according to the Notice and the data Breach

notification on Defendant's website, their Personal and Medical Information was stolen by criminals in the Data Breach.

155.    By providing medical services to Illinois residents and collecting and storing the Personal and Medical Information of those Illinois residents, Defendant is obligated to comply with the PIPA.

156.    Defendant is a Data Collector that maintains or stores, but does not own or license, computerized data that includes personal information that the Data Collector does not own or license. 815 ILCS 530/10(b). As such, Defendant was required to notify Plaintiff and Illinois Subclass members the Data Breach *immediately following discovery*, if the Personal and Medical Information was, or is reasonably believed to have been, acquired by an unauthorized person.  815 ILCS 530/10(b) (emphasis added).

157.    Defendant failed to notify Plaintiff and Illinois Subclass members of the Data Breach immediately following discovery, as Defendant sent the Notice 60 days after discovering the Data Breach on July 13, 2021.  By failing to notify Plaintiff and Illinois Subclass members of the Data Breach immediately upon discovering it, Defendant violated 815 ILCS 530/10(b).

158.    The PIPA requires a Data Collector, such as Defendant, that "maintains or stores ... records that contain personal information concerning an Illinois resident" to "implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, ... use, ... or disclosure."  815 ILCS 530/45(a).

159.    Defendant violated the PIPA by failing to implement and maintain reasonable security measures to protect the records of Illinois residents from unauthorized access, acquisition, use, or disclosure.

160.    Defendant failed to implement and maintain reasonable security procedures and

34

practices appropriate to the nature and scope of the information compromised in the Data Breach.

161.    Defendant engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of 815 ILCS 505/2 and 815 ILCS 530/20. Specifically, Defendant voluntarily undertook the act of maintaining and storing Plaintiff's and Illinois Subclass members' Personal and Medical Information, including their Social Security numbers, but Defendant failed to implement safety and security procedures and practices sufficient enough to prohibit the Data Breach from occurring, which it should have anticipated. Defendant should have known and anticipated that data breaches—especially health data—were on the rise, and that medical institutions were lucrative or likely targets of cybercriminals looking to steal Personal and Medical Information. Defendant should have implemented and maintained procedures and practices appropriate to the nature and scope of information compromised in the Data Breach. Defendant should also have notified Plaintiff and Illinois Subclass members of the Data Breach immediately upon discovering it.

162.    As a result of Defendant's violation of the PIPA and ICFA, Plaintiff and Illinois Subclass members incurred economic damages, including expenses associated with necessary credit monitoring.

163.    Defendant's conduct implicates consumer protection concerns as the Data Breach affects the public, caused Plaintiff and Illinois Subclass members to have to purchase credit monitoring services that they otherwise would not have purchased, caused them to have to freeze their credit, and will continue to cause harm to Plaintiff and Illinois Subclass members in the increased risk of identity theft, and because identity thieves may use Plaintiff's and Illinois Subclass members' Personal and Medical Information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

164. Defendant knew or should have known that its data security measures were inadequate to safeguard Plaintiff's and other Illinois Subclass members' Personal and Medical Information. Defendant's actions in engaging in the foregoing unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and members of the Illinois Subclass.

165. Defendant engaged in unfair and deceptive acts or practices when it required its customers to provide Personal and Medical Information and then failed to take reasonable measures to protect their Personal and Medical Information. Defendant failed to inform Plaintiff and Illinois Subclass members of its actions and inactions that resulted in the Data Breach.

166. Defendant intended that Plaintiff and the members of the Illinois Subclass rely upon Defendant's omissions.

167. Defendant's omissions possess the tendency or capacity to mislead and create the likelihood of deception.

168. The above-described deceptive and unfair acts and practices were used or employed in the conduct of trade or commerce, namely, the provision of healthcare services to Plaintiff and the Illinois Subclass.

169. The above-described deceptive and unfair acts offend public policy and cause substantial injury to consumers

170. Plaintiff and the Illinois Subclass relied upon Defendant's omissions described above.

171. Had Plaintiff and the Illinois Subclass known that Defendant made omissions and did not have adequate measures in place to protect their Personal and Medical Information, they would have not provided their Personal and Medical Information to Defendant or they would have

required that Defendant implement and maintain adequate security measures before providing their Personal and Medical Information to Defendant.

172.    As a direct and proximate result of Defendant's acts and omissions set forth above, Plaintiff and other Illinois Subclass members suffered injuries, including the loss of their legally protected interest in the confidentiality and privacy of their Personal and Medical Information, and damages.

173.    Additionally, as a direct and proximate result of Defendant's conduct, Plaintiff and Illinois Subclass members suffered anxiety, emotional distress, and loss of privacy.

174.    Accordingly, Plaintiff, individually and on behalf of the Illinois Subclass, respectfully request this Court award all relevant damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment against Defendant as follows:

a.    An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b.    A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual damages, punitive damages, attorneys' fees, expenses, costs, and such other and further relief as is just and proper;

c.    An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.    An order requiring Defendant to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

e. A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law; and

f. An award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all appropriate issues raised in this Class Action Complaint.

> Plaintiff CATHERINE GARCIA, individually and on behalf of all other similarly situated individuals,
>
> By: _/s/ Thomas A. Zimmerman, Jr._
> Thomas A. Zimmerman, Jr. (IL #6231944)
> *tom@attorneyzim.com*
> Sharon A. Harris
> *sharon@attorneyzim.com*
> Matthew C. De Re
> *matt@attorneyzim.com*
> Jeffrey D. Blake
> *jeff@attorneyzim.com*
> ZIMMERMAN LAW OFFICES, P.C.
> 77 W. Washington Street, Suite 1220
> Chicago, Illinois 60602
> Telephone: (312) 440-0020
> Facsimile: (312) 440-4180
> www.attorneyzim.com
>
> William B. Federman*
> FEDERMAN & SHERWOOD, OBA #2385
> 10205 North Pennsylvania Avenue
> Oklahoma City, Oklahoma 73120
> Telephone: (405) 235-1560
> Facsimile: (405) 239-2112
> *wbf@federmanlaw.com*
>
> Cornelius P. Dukelow* (OBA No. 19086)
> ABINGTON COLE + ELLERY

38

320 South Boston Avenue
Suite 1130
Tulsa, Oklahoma 74103
918.588.3400 (*telephone & facsimile*)
*cdukelow@abingtonlaw.com*

\**pro hac vice* applications forthcoming

*Counsel for Plaintiff and the Putative Classes*

# EXHIBIT 1

DuPage Medical Group

WE CARE FOR YOU

Return Mail Processing Center
PO Box 6336
Portland, OR 97228-6336


*400521360003868874*
000 0008539 00000000 0001 0003 02847 INS: 0 0
CATHERINE E GARCIA

September 10, 2021

## NOTICE OF SECURITY INCIDENT

Dear Catherine E Garcia:

As CEO of DuPage Medical Group, Ltd. ("DMG"), I am writing to make you aware of an incident that may affect the security of some of your information. Our community has heard of countless security incidents affecting many organizations across a variety of industries in the recent months. Unfortunately, DMG is among this group of organizations affected. The information below outlines details about the incident, our response, and resources available to you.

*What Happened?* On July 13, 2021, we experienced a security incident that caused a disruption to our network systems. We immediately began working with third-party cyber-forensic specialists to assist in our investigation to determine the full nature and scope of the incident. It was determined that the network outage was caused by unauthorized actors who gained access to the DMG network between July 12, 2021, and July 13, 2021. Through the investigation, it was discovered that certain systems containing information related to patients may have also been impacted by this event. DMG, with the assistance of the forensic specialists, conducted a thorough and time-consuming review of its systems to understand whether any patient information may have been impacted as a result of this event. On August 17, 2021, we determined that certain files stored within our environment that contained your information may have been impacted by this event.

*What Information Was Involved?* Our investigation to date has revealed the following types of personal information potentially affected by this incident include your name, address, date of birth, diagnosis code, CPT code (Current Procedural Terminology, also known as service codes, is a universal system that identifies medical procedures), and treatment date. We have no evidence that any information has been subject to actual or attempted misuse as a result of this incident. **Based on our investigation, this event did not impact your financial account numbers or Social Security number.**

*What We Are Doing.* Information security is among DMG's highest priorities, and we have security measures in place to protect information in our care. Upon becoming aware of this incident, we immediately took steps to confirm the security of our systems. As part of our ongoing commitment to the security of information, we are reviewing existing security policies and have implemented additional cybersecurity measures to further protect against similar incidents from occurring in the future. In addition, we notified law enforcement and are supporting their investigation into this incident.

We are notifying potentially impacted individuals, including you, so that you may take steps to best protect your information, should you feel it is appropriate to do so. We are also reporting this incident to regulatory officials, as required. A special call center has been established by DMG to help answer questions about this incident.

As an added precaution, we are offering you access to credit monitoring and identity theft protection services for 12 months at no cost to you, through Equifax. You may find information on how to enroll in these services in the enclosed "*Steps You Can Take to Protect Your Information.*" We encourage you to enroll in these services as we are not able to do so on your behalf.

AE3551 v.05



**What You Can Do.** We encourage you to remain vigilant against incidents of identity theft and fraud by reviewing your account statements and monitoring your free credit reports for suspicious activity and to detect errors. Please also review the information contained in the enclosed "*Steps You Can Take to Help Protect Personal Information.*"

**For More Information.** We understand that you may have questions about this incident that are not addressed in this letter. If you have additional questions, please call our dedicated assistance line at 800-709-2027 between the hours of 8am and 8pm CST Monday through Friday. This line is staffed with specialists who understand these types of incidents and the steps that can be taken to support you.

DMG will use this incident as an opportunity to continue our aggressive investment in technology and security measures across our enterprise. Our organization shares a restless energy to not only secure our infrastructure but improve every aspect of our technology roadmap to better serve patients. I look forward to sharing more about our efforts as we progress in this journey.

In closing, I want to emphasize my personal ongoing commitment to protect and support every patient we serve. We will work tirelessly to remain your trusted partner in health and care, both now and in the future.

Sincerely,

Steve Nelson
Chief Executive Officer
DuPage Medical Group, Ltd.

AE3552 v.05